

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2002

# Flemming v. Air Sunshine Inc

Precedential or Non-Precedential: Precedential

Docket No. 01-3183

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Flemming v. Air Sunshine Inc" (2002). *2002 Decisions.* Paper 753.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/753

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed November 19, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-3183/3396

SABINE FLEMMING, AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF JAMES S. FLEMMING,

v.

AIR SUNSHINE, INC., and GEORGE J. JAMES,

        Sabine Flemming, As Personal Representative Of
        the Estate of James S. Flemming,
        Appellant in No. 01-3183

        Air Sunshine Inc.; George J. James;
        National Union Fire Insurance Company Of
        Pittsburgh, PA.
        Appellants in No. 01-3396

On Appeal from the District Court
of the Virgin Islands, Division of St. Croix
District Court Judge: The Honorable Raymond L. Finch,
Chief Judge
(D.C. Civil No. 97-CV-00052)

Argued on May 15, 2002

Before: AMBRO, FUENTES, and GARTH, Circuit Jud ges

(Opinion Filed: November 19, 2002)


        Pamela Lynn Colon, Esq. [ARGUED]
        Law Offices of Lee J. Rohn
        1101 King Street, Suite 2
        Christiansted, St. Croix
        United States Virgin Islands 00820

         Counsel for Appellant/
        Cross-Appellee Sabine Flemming

        William G. Burd [ARGUED]
        Kenneth D. Murena
        Tew Cardenas Rebak Kellogg
         Lehman DeMaria Tague
         Raymond & Levine, LLP
        Miami Center, 26th Floor
        201 S. Biscayne Boulevard
        Miami, Florida 33131

         Counsel for Appellees/Cross-

        Appellants Air Sunshine, Inc. and
        George J. James

OPINION OF THE COURT

FUENTES, Circuit Judge:

This unusual case arises from the tragic death of James
S. Flemming, who died as a result of a plane crash off the
coast of St. Thomas in the United States Virgin Islands.
James Flemming survived the crash, but drowned when the
plane sank. James Flemming's wife, Sabine Flemming, sued
the airline, Air Sunshine, Inc., and the pilot, George J.
James (collectively "Air Sunshine"). The parties entered into
settlement discussions during which the plaintiff contended
that the airplane's crash into the water resulted only in
emotional distress to her husband and that his death by
drowning was a separate occurrence from the crash itself.
She thus claimed that her husband's accident constituted
multiple occurrences under Air Sunshine's insurance
policy.

The parties entered into a partial settlement under which
the defendants paid plaintiff $500,000. The settlement

order provided that the issue of multiple occurrences under
Air Sunshine's insurance policy would be "non-jury" and
decided by the District Court. Following discovery, extensive
briefing, and the arguments of counsel, the court concluded
that Air Sunshine's policy allowed recovery for multiple
occurrences, but that James Flemming's death resulted
from a single occurrence.

On appeal, Sabine Flemming claims that although the
court correctly determined that the policy allowed for
multiple recoveries, "it should have left the factual
determination of the number of occurrences to the jury."
Flemming Br. at 27. We agree with the District Court that
the settlement authorized the court to decide the entire
issue of multiple occurrences. We also agree with the
court's ultimate determination that, while Air Sunshine's
policy allowed coverage for multiple occurrences, the events
that led to James Flemming's death constituted a single
occurrence under that policy. We therefore affirm the
District Court's final order in all respects.

I. Facts and Procedural Background

A. The Plane Crash and the Partial Settlement

James Flemming was a passenger on an Air Sunshine
flight from St. Croix to St. Thomas in the United States
Virgin Islands on February 8, 1997. The plane, piloted by
Defendant James, crashed into the ocean at night during
its approach to St. Thomas. The plane was not destroyed
on impact, but immediately began taking on water and
sinking. Pilot James and three of the four passengers

escaped from the plane before it sank, although one passenger later drowned when he could no longer hold on to a life vest he was sharing with another passenger. According to deposition testimony and Sabine Flemming's biomechanics expert, James Flemming was still alive after the plane crashed and was struggling with his seat belt as the pilot and the other passengers exited the aircraft. James Flemming did not escape from the sinking plane, ultimately drowning.

3

The parties vigorously dispute the circumstances of the plane crash and the alleged lack of precautions and rescue efforts taken by pilot James. James testified in his deposition that when the plane hit the water, he was "scared to death" and "must have been knocked out." App. at 169-70. James stated that, after hitting the water he could not make radio contact because "the next thing [he] remember[s] is the water being up about midway deep past the tops of the seat cushion tops . . . and the plane from that point in time sunk within 15 seconds." Id. at 172-73. James said that, after impact, he swam through the cabin and found a life jacket floating in the back. He heard passengers yelling, and one passenger in front of him said that he could not swim, so James gave him his life jacket. He stated that it was very dark and that he wished he had retrieved more life vests, but that "the plane was just about ready to sink," and that he "really didn't think [he] had the time" to get more vests. Id. at 173-76. He stated that once he emerged from the plane, he could not see any passengers because it was "pitch black" and he was in shock. Id. at 177, 196-97. James disputed the account of other passengers that James Flemming was still in his seat trying to remove his seatbelt when James swam through the plane's cabin. James explained that the cabin was very small and that he would have brushed against James Flemming if he was there. James eventually swam to some nearby rocks for safety.

Two surviving passengers, Frankie Bellot and Eugene Willett, both testified in depositions that, from the time they got out of the plane, about three or four minutes passed before the plane sank. They testified that the pilot left the plane first. They also stated that it was very dark and that they could not remember every detail because the events were so chaotic. Willett stated that he saw James Flemming alive and still in his seat trying to detach his seatbelt while he was exiting the plane.

Sabine Flemming filed a wrongful death action against the airline and the plane's pilot in the District Court of the Virgin Islands, Division of St. Croix. She sued individually and in her capacity as personal representative of the estate of her late husband, asserting claims of negligence,

4

negligent infliction of emotional distress, and intentional infliction of emotional distress. Thereafter, the parties entered into settlement negotiations, with a Magistrate Judge facilitating the discussions. Eventually, the parties agreed to a partial settlement, which the Magistrate Judge memorialized in an order dated March 3, 1998.

Under the partial settlement set forth in the Magistrate Judge's order, Air Sunshine agreed to pay Sabine Flemming $500,000 for the release of all claims regarding the death of James Flemming. Air Sunshine's insurer was allowed to "intervene . . . on a complaint for declaratory judgment." Id. at 12. The settlement order states that, presumably for purposes of the declaratory judgment motion, " [t]he issues to be considered (non-jury) are federal preemption through Warsaw Convention ["Warsaw"] and Death on the High Seas Act ["DOHSA"], and multiple occurrences as they relate to insurance coverage herein." Id. at 12 (emphasis added). The order provided that Sabine Flemming would file "a statement of multiple occurrences claimed (that have reasonably been pled in plaintiff 's amended complaint) within twenty (20) days," and that Air Sunshine could "specify its DOHSA defense claim" in response to this statement. Id.

The settlement order then laid out a series of additional situations under which Sabine Flemming could recover more than the $500,000 base settlement amount. These additional recoveries depended on the court's resolution of the Warsaw/DOHSA and multiple occurrence issues. Under these settlement provisions, if Sabine Flemming did not prevail on the multiple occurrences issue, she could not recover any amount beyond the initial $500,000 payment.[1]

---

1. With regard to these potential additional recoveries, the settlement order states:

> (c) If the plaintiff does not prevail on multiple occurrences or if the insurer prevails on Warsaw, the plaintiff gets nothing additional.

> (d) If the plaintiff prevails on multiple occurrences and the insurer does not prevail on Warsaw and DOHSA, the plaintiff gets $450,000.00 additional.

> (e) If the plaintiff prevails on multiple occurrences and the insurer prevails on DOHSA, the parties will then litigate the plaintiff 's

The order specified that "whether the plaintiff is entitled to a jury trial on such issue of damages shall be decided at such time upon briefs." Id. at 13.

Along with the settlement order, the court issued a separate scheduling order detailing a discovery and briefing schedule solely on the "plaintiff 's claim for multiple occurrences." Id. at 1061. That scheduling order stated that, following discovery, Sabine Flemming would file a

"motion and memorandum regarding multiple occurrences" with the District Court, and all further action would be stayed pending its decision. Id. at 1062. Under the settlement order, discovery relating to other issues would be allowed only if Sabine Flemming prevailed on her claim for multiple occurrences. Id. at 13.

The record does not reveal that Air Sunshine's insurer ever intervened by seeking a declaratory judgment action. However, the case nonetheless proceeded along the route contemplated by the settlement and scheduling orders, with Air Sunshine effectively asserting the positions of its insurer. Pursuant to the settlement order, Sabine Flemming filed a notice of occurrences in March 1998. She identified four separate "occurrences": 1) the crash of the plane and the negligent operation of the plane; 2) the failure to provide a pre-flight safety briefing; 3) the failure to notify passengers of the impending crash and failure to provide emergency safety instructions; and 4) after the crash, the failure to provide James Flemming with a life vest or other safety equipment, the failure to provide him any aid or assistance in exiting the plane or in any other fashion, and the pilot's "taking the life jackets and swimming off instead

_____

> DOHSA allowed damages to a maximum of $450,000.00 additional, e.g.
>
> (i) If the plaintiff shows total $400,000.00 economic, plaintiff gets no additional.
>
> (ii) If the plaintiff shows total $650,000.00 economic, plaintiff gets $150,000.00 more.
>
> (iii) If the plaintiff shows total $1,000,000.00 economic, plaintiff gets $450,000.00 additional.

App. at 12-13.

of providing assistance (i.e., the Captain failing to go down with the ship)." Id. at 56-57.

In April 1998, the parties entered into a release of claims as contemplated by the partial settlement agreement. The release waived claims in exchange for $500,000 from Air Sunshine, "subject to the reservation that Plaintiff 's estate may be entitled to additional sums if it is successful in its claim of 'multiple occurrences' " under the settlement agreement and order. Id. at 436.

B. Air Sunshine's Insurance Policy

Resolution of this appeal requires us to construe both the partial settlement agreement and the terms of Air Sunshine's insurance policy with regard to the issue of "multiple occurrences." Some of the relevant terms are found in Liability Coverage D of the policy, entitled "Single

Limit Bodily Injury and Property Damage Liability." Under Coverage D, the insurer agrees

> to pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury sustained by any person (excluding any passenger unless the words "including passengers" appear in item 3 of the Declarations) and property damage, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft . . .

App. at 354 (emphasis added).2 Because the words "including passengers" appear in item 3 of the declarations page for the Air Sunshine policy, this coverage extends to passengers. The policy limits liability under Coverage D regardless of the number of persons injured or the number of claims brought. The limitation begins:

> The total liability of the [insurance] Company for all damages, including damages for care and loss of services, because of bodily injury or property damage

_____

2. In the "Definitions" section of the policy, words with specific definitions are printed in boldface type. We omit these emphases from our quotations of the policy language.

> sustained by one or more persons . . . as the result of any one occurrence shall not exceed the limit of liability stated in the Declarations as applicable to "each occurrence."

Id. at 357 (emphasis added).3 The declarations page for Coverage D limits liability for "each occurrence" to $10,000,000. Id. at 362. Coverage D is subject to further limitations as follows:

> And further provided that if the Declarations are completed to show "passenger liability Limited internally to", the total liability of the Company for all damages, including damages for care and loss of service, because of bodily injury to passengers shall not exceed:
>
> (a) as respect any one passenger, the amount stated in the Declarations as applicable to "each person" . . .

Id. at 357. The declarations page for Coverage D lists "Single Limit – including passengers with passenger liability limited internally to" and limits liability for"each person" to $500,000. Id. at 362.

The parties dispute the effect of these limits, and specifically contest the extent of a person's coverage for "multiple occurrences." Coverage for multiple occurrences may also be referred to as "policy stacking" because Sabine

Flemming seeks to aggregate or "stack" coverages and coverage limits for each occurrence under the policy. See, e.g., Rupert v. Liberty Mut. Ins. Co., 291 F.3d 243, 244 n.1 (3d Cir. 2002) (defining "stacking" in context of automobile insurance policy). Under the settlement, Sabine Flemming has received $500,000, the limit of coverage for one occurrence under the policy. Her claim for the additional recovery contemplated by the partial settlement therefore depends first on whether she can stack multiple coverage limits for more than one occurrence.

The meaning of "occurrence" is thus central to this case. "Occurrence" is defined under the policy as "an accident,

_____

3. "Bodily injury" is defined under the policy as "bodily injury, sickness, disease or mental anguish . . . including death." App. at 358.

8

including continuous or repeated exposure to conditions, which results in bodily injury or property damage during the policy period neither expected or intended from the standpoint of the Insured . . ." App. at 359. Coverage D further defines the scope of an "occurrence":

> For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

Id. at 357 (emphasis added).

To address the "multiple occurrences" issue under the policy, Sabine Flemming submitted the opinions of three expert witnesses. Her biomechanics expert stated that multiple occurrences of negligence caused James Flemming's injuries and death, and her aviation expert opined that the pilot committed several negligent acts and violated federal regulations. A third expert, an insurance advisor, concluded that the policy, interpreted in light of industry custom and usage, permitted stacking and that there were two insured occurrences in this case-- the crash and the pilot's neglect to instruct or assist James Flemming.

Air Sunshine submitted the opinion of an insurance consultant, Charles A. Tarpley, who concluded that the crash and subsequent death of James Flemming comprised only one occurrence under the policy and industry custom and practice. Tarpley opined that to find multiple occurrences under common insurance industry usage and the specific policy language, "it is necessary to identify multiple separate accidents, each resulting in bodily injury," and that the "crash into the ocean is the accident that gave rise to Mr. Flemming's injury." Id.  at 427.

C. District Court Decisions

After discovery and a hearing on multiple occurrences, the District Court issued an opinion on January 14, 2000, holding that the policy permits stacking but that there was only one occurrence, and, therefore, Sabine Flemming

9

could not recover any additional amount under the settlement. The court concluded that, under the policy, "an individual may not recover more than $500,000 from Air Sunshine in the event of bodily injury during a flight arising from one accident." App. at 23. In a subsequent opinion on a motion for reconsideration, the court noted that even though an individual could recover a maximum of $500,000 for bodily injury resulting from one occurrence or accident, an additional award could be recovered if Sabine Flemming could prove a second occurrence caused the death of her husband.

In its initial opinion, the court construed "occurrence" to be synonymous with "accident" and then decided whether there was more than one "accident" or "occurrence" in this case. The District Court relied on the "cause" theory adopted by this Court, under which "a court asks if there was one proximate, uninterrupted cause which resulted in all of the injuries and damage." Id. at 23 (citation omitted). The court found that "the proximate cause of Flemming's death is indisputably the plane crash," that none of the other alleged negligent acts "standing on their own would have led to Flemming's demise absent the crash," that these other negligent acts do not meet the definition of "accident," and that "[p]laintiffs do not assert that at any point Flemming was out of danger and then placed back into harm's way by Air Sunshine or its employees." Id. The court therefore concluded that because the plane crash "led to a continuous chain of events culminating in Flemming's death," it was the proximate cause of his death. Id. The court also denied Sabine Flemming's motion to strike Tarpley's expert opinion. Because, under the settlement order, Sabine Flemming gets no additional award if she does not "prevail on multiple occurrences," the court's ruling effectively disposed of the entire case.

Sabine Flemming filed a motion for reconsideration, which the court granted on April 6, 2000. After explaining that it had held that the policy allowed recovery for multiple occurrences, the court vacated its initial finding that only one occurrence took place. It reinterpreted the Magistrate Judge's settlement order to mean that "this Court was only to decide the legal question of whether multiple occurrences

10

are contemplated by the insurance policy" and that the issue of whether there was more than one occurrence was a jury issue. Id. at 29. The court held that it should have ended its analysis once it determined that the policy allows

recovery for multiple occurrences.

Air Sunshine then filed another motion for reconsideration in June 2000, arguing both that the policy does not permit stacking and that the court had the power under the settlement order to decide whether there actually were multiple occurrences under the policy on these facts. On July 17, 2001, the court granted the motion for reconsideration, and reversed itself for the second time by vacating the April 6, 2000 decision and reinstating its original January 14, 2000 opinion, which held that only one occurrence led to James Flemming's death.[4] The court forthrightly admitted that it had erred in the April 6 opinion "because it did not properly consider the Agreement as a whole." Id. at 33. After assessing the settlement order, the documents referenced in that order, the transcript of the settlement conference, and the scheduling order, the court concluded that it "was to determine the entire issue of liability as it relates to multiple occurrences" and that Sabine Flemming had waived her right to a jury trial on this entire issue. Id. at 37. On September 6, 2001, the court declared its judgment final. Id. at 40.

Sabine Flemming and Air Sunshine both timely appeal.[5] The District Court had diversity jurisdiction over this case under 28 U.S.C. S 1332. We have jurisdiction over the District Court's final order pursuant to 28 U.S.C.S 1291.

_____

4. The record does not reveal why there was over a year-long delay between the filing of the second motion for reconsideration and the court's decision.

5. Sabine Flemming filed her appeal before the District Court entered final judgment in this case, and in response, Air Sunshine filed a protective cross-appeal and a notice to dismiss the appeal. After the court issued a final judgment dismissing the case, Air Sunshine withdrew its motion to dismiss the appeal.

II. Waiver of Right to Jury Trial

Sabine Flemming contends on appeal that the settlement only authorized the court to resolve the question of whether the policy allowed for the stacking of coverage, and that she never waived the right to have a jury decide whether the events which led to James Flemming's death constituted multiple occurrences. In the alternative, Sabine Flemming argues that even if the court could decide whether there were multiple occurrences, it erred in holding that the events resulting in James Flemming's death constituted a single occurrence under the policy. Finally, Sabine Flemming claims that the District Court erred in denying her motion to strike the expert opinion of Charles A. Tarpley. On cross-appeal, Air Sunshine argues that the District Court erred in concluding that the policy allows stacked coverage for multiple occurrences.

We first consider whether the settlement allowed the court to decide whether multiple occurrences may be found in this case. Basic contract principles apply to the review of settlement agreements. See In re Cendant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000). We exercise plenary review over the District Court's legal construction of the settlement agreement. See Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002). We also have plenary review over application of the construction of an agreement to the facts of a case. See STV Engineers, Inc. v. Greiner Engineering, Inc., 861 F.2d 784, 787 (3d Cir. 1988)

The District Court read the terms of the settlement to entail a waiver of Sabine Flemming's Seventh Amendment right to a jury trial on the entire issue of multiple occurrences. In her first amended complaint, she demanded a jury trial. We have joined other courts of appeals in establishing that an intentional relinquishment of the right to a jury trial is not required for waiver. See, e.g., In re City of Philadelphia Litig., 158 F.3d 723, 726 (3d Cir. 1998) (holding that right to jury trial may be waived by "inaction or acquiescence"); Wilcher v. City of Wilmington, 139 F.3d 366, 379 (3d Cir. 1998) (noting that "once a party makes a timely demand for a jury trial, that party subsequently waives that right when it participates in a bench trial without objection").

Air Sunshine argues that Sabine Flemming waived her right to a jury trial expressly and impliedly in the settlement, and confirmed this waiver in numerous other statements made by her counsel in written submissions to the court and during various oral arguments. We begin with the settlement order and the documents referenced by that order.

The sparse language of the settlement order provides at least some support for Sabine Flemming's arguments. The operative language of the order states that "[t]he issues to be considered (non-jury) are . . . multiple occurrences as they relate to insurance coverage herein." App. at 12. One could plausibly read this language in isolation to mean that the non-jury issue is limited to whether the policy allows coverage for multiple occurrences. Counsel for Sabine Flemming suggested at oral argument that the phrase "as they relate to insurance coverage" would be superfluous if the court was also to decide whether there were multiple occurrences on the facts of this case. This Court concludes that the phrase "as they relate to insurance coverage" simply frames the multiple occurrences issue as a matter of insurance coverage and grounds the issue in Air Sunshine's insurance policy. Whether the events which led to James Flemming's death constituted multiple occurrences under the policy logically "relate[s] to insurance coverage."

Other provisions of the settlement order strongly support the District Court's ultimate ruling. The order's only reference to further litigation beyond the court's "non-jury"

determination of the issues of Warsaw/DOHSA and multiple occurrences is found in paragraph (e). This paragraph states: "If the plaintiff prevails on multiple occurrences and the insurer prevails on DOHSA, the parties will then litigate the plaintiff 's DOHSA allowed damages to a maximum of $450,000.00 additional. . . ." Id. at 12-13. As the District Court observed in its July 17, 2001 opinion granting the second motion for reconsideration, if the parties intended to reserve the factual issue of the existence of multiple occurrences for a jury, then this paragraph "would have provided additional language to the effect that should Plaintiffs prevail on the legal issue of multiple occurrences, then the parties shall

13

litigate the factual issue of whether Flemming's death was the result of one or more occurrences." Id. at 35. Furthermore, paragraph (g) of the settlement order states that "[a] separate scheduling order shall be entered regarding the plaintiff 's claim for multiple occurrences. If plaintiff prevails on such claim, additional discovery will be allowed concerning the remaining issues." Id. at 13. We believe that the phrase "multiple occurrences" in the settlement order encompasses one entire issue, and that the phrase "remaining issues" refers to all other disputes, such as damages.

Statements made by the Magistrate Judge and the parties during the settlement conference support the conclusion that the settlement agreement limited possible jury involvement to consideration of damages, rather than consideration of any issues regarding Sabine Flemming's multiple occurrence theory. Sabine Flemming's attorney stated to the court that "as soon as you say I don't prevail on multiple occurrences nothing ever happens after that." Id. at 36. The Magistrate Judge's response reveals that, even if Sabine Flemming prevailed under her theory of multiple occurrences, she would be limited to pursuing DOHSA damages, potentially before a jury:

> That's correct. If Defendant does not prevail on Warsaw and if Plaintiff does prevail on multiple occurrences, and if defendant prevails on DOHSA [sic], then we are left with the matter of setting what Plaintiff 's pecuniary or DOHSA [sic] allowed claims are, and that matter would then have to go to trial. By agreement . .. all of the prior matters will have been determined by the judge without a jury. However, with regard to whether or not plaintiff is entitled to a jury in actually determining the amount of her DOHSA [sic] allowed . . . damages . . . to the extent the Plaintiff is allowed a jury by law, Plaintiff would ask for that jury. A Defendant would contest that and the court would decide at that time whether or not the Plaintiff was entitled to a jury as to some or all of the claims allowable under DOHSA [sic].

Id. (emphasis added).

Sabine Flemming's counsel objected to this characterization, arguing that his client had demanded a jury trial in her complaint and that "[t]he issue of whether or not plaintiff is entitled to a jury trial appears to be a legal issue which would be decided by the court." Id. Yet the court then clarified its view of the jury trial issue, responding that whether Sabine Flemming would be entitled to a jury trial "would be reserved until the time that situation 5 occurs." Id. Sabine Flemming's counsel answered, "Correct," and the court clarified that the jury trial issue would arise only when it would be "applicable" under "situation 5" and that it would not be "predetermined." Id. at 68. "Situation 5" refers to a provision in a letter the Magistrate Judge sent to counsel suggesting settlement terms, and that provision became paragraph (e) in the final settlement order.6 Id. at 1049. The settlement language, supplemented by the settlement conference and the Magistrate's letter that set the terms of the settlement, demonstrates that the only possible jury issue involves damages, and that this issue would arise only after the court decided the multiple occurrence issue.7

Finally, any doubt we might have is assuaged by our review of Sabine Flemming's numerous submissions and briefings to the District Court. She argued at length in her various district court submissions not just that the policy allowed stacking, but also that the facts of this case amount to multiple occurrences under the policy. For example, on the first page of her Memorandum Regarding

_____

6. The letter fails to mention any role for a jury regarding any element of the multiple occurrence issue. It simply states that"[i]f insurer prevails on Warsaw and/or no multiple occurrences, plaintiff gets nothing additional" and "[i]f plaintiff prevails on Warsaw and multiple occurrence and defendant prevails on DOHSA -- litigate plaintiff 's economic damage . . . ." App. at 1049 (emphasis added).

7. The Magistrate Judge strongly suggested, in a status conference after the District Court granted the first motion for reconsideration, that the settlement left the entire multiple occurrences issue to the court. The Magistrate Judge stated that he was "surprised" with the District Court's reading of the settlement, and he declared some of Sabine Flemming's arguments "inconsistent with the language of the order." App. at 91-92, 96.

Multiple Occurrences, she stated that "[t]he point at issue here is whether Mr. Flemming was subjected to more than one 'occurrence' or act of negligence which resulted in his injury and death." Id. at 868. In her Reply Memorandum Regarding Multiple Occurrences, she wrote that "[t]he Defendant is to assume the additional events occurred as stated by Plaintiff, and if so, does that constitute multiple

occurrences." Id. at 977 (citations omitted) (emphasis added). Later, in the conclusion to this Reply Memorandum, Sabine Flemming again seemed to contend that the court should decide both the legal issue (whether the policy permits stacking) and the factual issue (whether there are multiple occurrences in this case):

> Accordingly, this Court should make a decision, as noted in the settlement entered into before the Magistrate, and as reflected in his Order, and render a decision holding that there were 'multiple occurrences' in this case.

Id. at 990.

Furthermore, Air Sunshine rightly notes that in Sabine Flemming's Memorandum Regarding Multiple Occurrences, the entire fact section and much of the argument section address whether the events leading to James Flemming's death constitute multiple occurrences, and not simply whether the policy allows stacking. Her briefs leading up to the District Court's first opinion on January 14 extensively argue the facts of the case and whether they establish multiple occurrences. Although she now argues that she did not waive her right to a jury trial on some elements of the multiple occurrences issue, in her prior submissions to the court before its first opinion was issued, not to mention in the settlement itself, Sabine Flemming acquiesced to the court reaching this issue.8

_____

8. In her reply brief to this Court, Sabine Flemming further undercuts her own argument. She states that "the issue at hand was not what actually happened, but whether Flemming's versions of the events, if proven, would support multiple occurrences under the policy resulting in policy stacking." Flemming Rep. Br. at 3. The District Court in fact decided whether her version of events "would support multiple occurrences under the policy resulting in policy stacking," and nothing more.

16

We conclude that Sabine Flemming effectively waived her right to a jury trial on the entire issue of multiple occurrences by entering into the partial settlement and by later acquiescing to the court deciding the multiple occurrence issue "non-jury." The court did not exceed the scope of its authority under the settlement in reaching the factual question of whether the events leading to James Flemming's death constituted multiple occurrences as that term is defined under the policy.

III. Policy Stacking

Before turning to the factual question, we consider Air Sunshine's contention on cross-appeal that the policy does not allow for the stacking of coverage for multiple occurrences under any facts.

We exercise plenary review over the District Court's legal determination regarding the scope of coverage under the policy. See On Air Entertainment Corp. v. National Indem. Co., 210 F.3d 146, 150 (3d Cir. 2000). Because this case arose under diversity jurisdiction, we must apply the law of the Virgin Islands. The Virgin Islands Code provides that "[e]very insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part of the policy." 22 V.I.C. S 846. Further, under Virgin Islands law, "in the absence of express local laws to the contrary, the 'rules of the common law, as expressed in the restatements of law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands . . . .' " Buntin v. Continental Ins. Co., 583 F.2d 1201, 1204 n.3 (3d Cir. 1978) (quoting 1 V.I.C. S 4).

A court " 'should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them.' " Coakley Bay Condo. Ass'n v. Continental Ins. Co., 770 F.Supp. 1046, 1051 (D.V.I. 1991) (quoting Northbrook Ins. Co. v. Kuljian Corp., 690 F.2d 368, 372 (3d Cir. 1982)). "[A]n insurer's failure to 'express clearly and

17

unequivocally its intent' to exclude when it could have done so easily supports a conclusion that the relevant language is ambiguous." Id. at 1050 (quoting Buntin, 583 F.2d at 1206).

The District Court, in its initial January 14 opinion, stated that the policy "caps the amount of recovery for bodily injury or property damage for all claims arising from one occurrence at $10,000,000" and that the policy also "further limits recovery per passenger to $500,000 for bodily injury, but it does not indicate that this sum is dependent on the number of occurrences." App. at 22-23. The court concluded that under the policy, "an individual may not recover more than $500,000 from Air Sunshine in the event of bodily injury during a flight arising from one accident." Id. at 23. The court clarified this statement from its April 6 opinion, which has been vacated but still explains the holding on stacking that was never reversed: "[i]f Plaintiffs were able to prove that a second occurrence was responsible for the death of Flemming, Plaintiffs could recover an additional $500,000 for the second occurrence." Id. at 29.

We agree that the policy allows coverage to be stacked. The policy states that liability for bodily injury"as the result of any one occurrence shall not exceed" $10,000,000, which is "the limit of liability stated in the Declarations as applicable to 'each occurrence.' " Id.  at 357, 362. Because the Declarations include the phrase "passenger liability limited internally to," the policy further limits liability "as

respect any one passenger" to $500,000, which is "the amount stated in the Declarations as applicable to 'each person.' " Id.9

_____

9. In a footnote discussing this policy limitation, the District Court stated:

> The policy provides that "if the Declarations are completed to show 'passenger liability limited internally to', the total liability of the Company for all damages, including damages for care and loss of service, because of bodily injury or property damage to passengers shall not exceed . . . as respect to any one passenger, the amount stated in the Declarations as applicable to 'each person.' " The Declarations do not contain such a phrase and limit individual recovery to $500,000.

18

This language could be read to mean, as Air Sunshine argues, that the policy "delineates distinct liability limits for each person as opposed to the $10 million total limit for each occurrence" and therefore the court impermissibly inserted unstated terms into the policy to conclude that it allowed stacking. Air Sunshine Br. at 57. However, no clear policy language prevents stacking. The policy language fails to state clearly that the "each person" limitation is an independent cap that works separately from the "each occurrence" limitation. The policy may be reasonably interpreted to mean that coverage for one occurrence may not exceed $10,000,000 total, and, within that cap, liability per passenger is "limited internally to" $500,000 under the "each person" limit. The language is at best ambiguous as to whether the $500,000 "each person" cap applies to a single passenger regardless of the number of occurrences to which that passenger is subjected.

No clear policy language excludes policy stacking, and any ambiguity in the policy should be interpreted in favor of Sabine Flemming. See C.H. Heist Caribe Corp. v. American Home Assur. Co., 640 F.2d 479, 481 (3d Cir. 1981) ("All ambiguities must be resolved against the insurer and in favor of coverage."). We find that the policy allows stacking of the $500,000 "each passenger" coverages for multiple occurrences. Therefore, we must now consider whether the circumstances surrounding James Flemming's death constituted multiple occurrences under the policy.

IV. Multiple Occurrences

A. Accepting Flemming's Allegations

Sabine Flemming suggested in her briefing to the District Court that "[d]efendant is to assume the additional events

_____

App. at 23 n.3 (emphasis added) (citations omitted). The court's statement that the declarations page "do[es] not contain such a phrase" is in error, as the declarations page clearly includes the relevant words

and thus the "internal limitation" applies. Id. at 362. However, since our review is plenary, this error does not prevent us from affirming the court's ultimate conclusion, no matter if its reasoning was flawed. See Klein v. General Nutrition Co., Inc., 186 F.3d 338, 342 (3d Cir. 1999).

occurred as stated by Plaintiff, and if so, [whether they] constitute multiple occurrences." Id. at 977. In oral argument before the District Court on the first motion for reconsideration, Sabine Flemming's counsel suggested that the court was to accept her allegations as true for purposes of its ruling. Id. at 1357-58; 1363-64. Air Sunshine never objected to this assessment. Her counsel made the same assertion at oral argument before this Court, and Air Sunshine's counsel again failed to disagree.

However, while the parties appear to be under the impression that the settlement establishes this procedure, the settlement and its supporting documents in no way set forth such a process. It simply declares that "the issues to be considered (non-jury) are . . . multiple occurrences as they relate to insurance coverage herein." Id. at 12. In the absence of any agreed instructions to the contrary, the District Court should have made explicit findings of fact based on the evidence before it, and then applied these facts to the policy language and relevant caselaw. However, the District Court failed to provide any guidance as to the nature of its consideration of the facts in its opinion. It did not make clear whether it was accepting Sabine Flemming's allegations as true.

We express our frustration with the ad hoc, imprecise procedures followed by the parties and hence by the District Court. For purposes of these appeals, however, we will accept Sabine Flemming's allegations as true. Under any review of the facts, the events which led to James Flemming's death did not constitute multiple occurrences under the policy.

B. Multiple Occurrences under Air Sunshine's Insurance Policy

This Court has adopted the "cause theory" to determine the number of occurrences under an insurance policy. Under the cause theory, "[t]he general rule is that an occurrence is determined by the cause or causes of the resulting injury. . . . Using this analysis, the court asks if '(t)here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and

damage.' " Appalachian Ins. Co. v. Liberty Mutual Ins. Co., 676 F.2d 56, 61 (3d Cir. 1982) (citations and quotations omitted). Air Sunshine's insurance policy also contains a specific policy definition of "occurrence:"

>       an accident, including continuous or repeated
>       exposure to conditions, which results in bodily injury
>       or property damage during the policy period neither
>       expected or intended from the standpoint of the
>       insured . . . .

App. at 359. The policy further narrows the scope of
"occurrence" in discussing limitations on liability:

>       For the purpose of determining the limit of the
>       Company's liability, all bodily injury and property
>       damage arising out of continuous or repeated exposure
>       to substantially the same general conditions shall be
>       considered as arising out of one occurrence.

Id. at 357 (emphasis added). The policy therefore explicitly
defines "occurrence" to mean an "accident."

As we already noted, in her notice of occurrences, Sabine
Flemming specified four separate alleged occurrences: 1)
the plane crash itself; 2) the failure to provide a pre-flight
safety briefing; 3) the failure to notify passengers of the
impending crash and failure to provide emergency safety
instructions; and 4) after the crash, the failure to provide
any aid to James Flemming. Because the District Court
failed to find facts with regard to these allegations, we
assume each allegation of negligence to be true for
purposes of this opinion. Even so, we find that all of these
allegedly negligent acts constitute a single occurrence
under the terms of the insurance policy.

Sabine Flemming's allegations of pre-crash negligence,
including failure to provide a safety briefing and failure to
provide warning of the crash, do not meet the policy
definition of "occurrence" because they simply cannot be
seen as "accidents" independent from the crash itself. Any
pre-crash acts of negligence cannot be termed proximate
causes of James Flemming's death because the crash
intervened and the pre-crash negligence would not have
caused any injury absent the crash.

21

While it is true that James Flemming did not die upon
impact of the plane on the water, this fact alone does not
mean that the proximate cause of his death was the failure
of the pilot to aid passengers after the crash. Under both
the policy definition and our cause theory, the plane crash
was one "constant, uninterrupted cause" that subjected
James Flemming to "continuous or repeated exposure to
substantially the same general conditions" and led to his
death. The danger that resulted from the plane crashing
into the ocean at night was not interrupted or suspended
by any intervening event. Any post-crash incidents
stemmed from the extreme risk and disorder resulting from
the collision. The short time frame between the crash and
any subsequent negligent acts, while not dispositive, is
relevant when considered in the context of the confusion
and disorientation caused by the accident.

The cases on which Sabine Flemming relies either concern different definitions of "occurrence" or can be distinguished factually from this case. For example, in Wiltshire v. Government of Virgin Islands, 893 F.2d 629 (3d Cir. 1990), this Court found that a premature baby had suffered three distinct occurrences of medical malpractice during a single hospital stay. Id. at 634. Each of these negligent acts -- negligent placement of a catheter tube, negligent administration of CPR, and negligent placement of a second catheter tube into the infant's scalp -- each caused distinct injuries and were separated in time from one another. The Virgin Islands Malpractice Act, which controlled in Wiltshire, provides that "injury arising out of continuous or repeated exposure to substantially the same conditions shall be considered as arising out of a single occurrence." Id. (quoting 27 V.I.C. S 166b(e)). We held that under this standard, the infant's injuries "did not come about as a result of extended exposure to the same basic condition." Id.

This case is governed by the definition of occurrence found in Air Sunshine's insurance policy, which differs from the controlling standard in Wiltshire because the insurance policy here explicitly defines an occurrence as an accident. Common sense dictates that only one "accident" occurred here: the plane crash. Not only does this narrower

22

definition undermine any application Wiltshire might have to this case, but in Wiltshire three separate acts of negligence occurred, each of which standing alone caused a separate injury. The three distinct acts could not be said to create "continuous or repeated exposure to substantially the same conditions" but instead created separate, distinct conditions. Here, however, the plane crash exposed James Flemming to "substantially the same conditions" (namely a sinking plane and the severe risk of drowning) that caused his death, and any alleged pilot negligence after the crash failed to change, suspend, or alter these conditions.

We agree with Air Sunshine that the Wisconsin Court of Appeals opinion in Welter v. Singer, 376 N.W.2d 84 (Wis. Ct. App. 1985), is more analogous. The court described the facts in Welter as follows:

> Bruce Welter was riding his bicycle into a Janesville intersection when he was struck and seriously injured by a car driven by defendant Garland Singer. Welter's cycling companion, John Ihle, Jr., was also hit by the Singer car, but was not seriously injured. Singer stopped after the collision but then drove clear of the intersection, dragging Welter beneath the car, before stopping again. In an apparent attempt to find reverse gear, Singer again moved the car forward about a foot. He then got out of the car and Ihle got in. Ihle backed up about ten feet in an attempt to free Welter. Welter suffered permanent paraplegia from the trauma.

Id. at 84. Welter brought suit, arguing that under the defendant's auto insurance policy, plaintiff suffered four separate accidents or occurrences. The policy limited liability for "each person" for "any one accident." Id. at 85 n.1. This policy definition is similar to Air Sunshine's policy definition in this case, as both define "occurrence" in terms of an "accident."

The court in Welter quoted our opinion in Appalachian Ins. Co. and applied the "cause theory" to determine whether to affirm the trial court's ruling that there was only one "occurrence." The court reasoned:

> If cause and result are so simultaneous or so closely linked in time and space as to be considered by the

23

> average person as one event, courts adopting the "cause" analysis uniformly find a single occurrence or accident . . . . [I]t was the initial collision which created the occasion and circumstances for any subsequent injuries. There is no assertion that the last three operations of Singer's car would have inflicted any injury or would have occurred at all in the absence of the initial impact . . . . The entire incident lasted approximately one minute . . . . The proximity in both time and space of these events, and their direct interdependence, convince us that the average lay person would view the circumstances as a singular "accident" or "occurrence."

Id. at 87-88. Furthermore, the court rejected plaintiff 's argument that each of the driver's acts constituted separate accidents or occurrences because the driver regained control of the car between each act. The court held that "[w]hile Singer may have regained full control of his car each time he stopped, Welter was still trapped beneath it. Hence, Singer never regained a full measure of control over either the car's injury - inflicting potential or the situation in general." Id. at 88.

In this case, the plane crash and the subsequent allegedly negligent acts are so "closely linked in time and space as to be considered by the average person as one event." Id. at 87. The initial plane crash "created the occasion and circumstances" for James Flemming's subsequent death, and as the District Court concluded, the post-crash acts of the pilot would not have been injurious absent the crash. The failure to assist James Flemming medically, to provide him with emergency life vests, or otherwise to help him exit the plane all fall under the "substantially the same general conditions" created by the single accident -- the plane crash. These alleged post-crash negligent acts by the pilot were interdependent with, not independent of, the plane crash. Viewed in the light most favorable to Sabine Flemming, these facts do not support the claim that the pilot regained control of the situation in

the crazed minutes following the crash such that the pilot's post-crash actions amounted to an intervening cause or exposed James Flemming to a different set of conditions.

24

Just as the court in Welter concluded, a"common sense view of the facts" shows that James Flemming's death resulted from "causes acting concurrently with and directly attributable to" to the plane crash, and, therefore, the crash was the "predominant, active and continuing cause." Id. at 87.

As a result, we conclude that the plane crash and the events stemming from the crash all constituted a single "accident" and subjected James Flemming and the other passengers to "continuous or repeated exposure to substantially the same general conditions." James Flemming's death is tragic, but it was caused by only one occurrence under the terms of the policy. Thus, Sabine Flemming does not "prevail on multiple occurrences" and may not recover any additional money under the partial settlement.10

V. Conclusion

We hold that, under the partial settlement in this case, Sabine Flemming waived a jury trial on the entire issue of multiple occurrences, and reserved that entire issue for the District Court to decide. The court did not err in ultimately concluding that Air Sunshine's insurance policy allowed for the stacking of coverages for multiple occurrences but that, even accepting Sabine Flemming's allegations as true, only one occurrence resulted in James Flemming's death.

For the foregoing reasons, the final judgment of the District Court is AFFIRMED.

---

10. Finally, we consider Sabine Flemming's appeal of the District Court's denial of her motion to strike Air Sunshine's amended expert opinion of Charles A. Tarpley. We review a district court's decision to admit or exclude an expert opinion for abuse of discretion. See Pearson v. Component Technology Corp., 247 F.3d 471, 506 n.11 (3d Cir. 2001). We agree with the District Court that the expert's opinion as to the custom and usage of the term "occurrence" in the insurance industry did not constitute an impermissible legal conclusion. We find no abuse of discretion in the court's refusal to exclude this opinion.

25

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

26