**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1745
_____

REAL LEGACY ASSURANCE COMPANY, INC.

v.

LAMIA AFIF,
AS EXECUTOR OF THE ESTATE OF BILAL AFIF
AND ASSIGNEE OF BARBARA VOGT

LAMIA AFIF,
                            Appellant
_____

On Appeal from the District Court of the Virgin Islands, Division of St. Croix
(DC No. 05-00070)
District Judge:   Hon. Raymond L. Finch
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
December 17, 2010

BEFORE:   FUENTES, SMITH, <u>Circuit Judges</u>, and SÁNCHEZ, <u>District Judge</u><sup>*</sup>

(Opinion Filed: February 1, 2011)
_____

OPINION OF THE COURT
_____

---

<sup>*</sup> Honorable Juan R. Sánchez, Judge of the United States District Court for the
Eastern District of Pennsylvania, sitting by designation.

1

FUENTES, <u>Circuit Judge</u>.

This appeal arises out of the tragic drowning death of thirteen-month-old Bailal Afif.[1] The question presented is whether the drowning and the mother's subsequent discovery of the boy in the swimming pool are one occurrence or two. The District Court found them to be one occurrence. We agree and thus affirm, for the reasons set forth below.

I.

Because we write for the parties, we discuss the facts only to the extent necessary for resolution of the issue raised on appeal. In April 2004, Lamia Afif ("Afif") and her son visited the home of Barbara Vogt. There, Afif left to do her laundry, leaving her son under Vogt's care. When she returned, the boy was missing and Vogt did not know where he was. Afif searched the home and found her son in Vogt's swimming pool. She rushed the boy to the hospital, where he was pronounced dead.

A month before, Real Legacy Assurance Co., Inc., had issued a homeowner's insurance policy to Vogt. The policy provided for personal liability coverage of $300,000 per "occurrence." After Bailal's death, Lamia Afif, acting on her own and as the administrator of Bailal's estate, claimed that there were two occurrences: Bailal Afif's wrongful death and Lamia Afif's emotional distress at finding her son in the pool. Eventually, she settled these claims with Vogt for

_____

[1] At various points in the record, the name is spelled "Bilal," "Belal" and "Bailal." Appellate counsel uses the spelling "Bailal" and we adopt that spelling in this opinion.

2

$300,000 per occurrence, or a total of $600,000. As part of the settlement, Vogt assigned her rights under the insurance policy to Afif.

Thereafter, Afif and Real Legacy settled for $300,000, with each party reserving its right to litigate the number of occurrences. After the settlement, Real Legacy filed an action for interpleader and declaratory judgment in the Superior Court of the Virgin Islands. Afif counter-sued for breach of the settlement agreement and thereafter filed a notice of removal with the District Court for the Virgin Islands. After discovery, both parties filed motions for summary judgment.

In December 2008, the District Court filed a Memorandum Opinion and Order granting Real Legacy's motion and denying Afif's. The District Court, applying the "cause theory" in order to determine the number of occurrences, found that "Vogt's negligent supervision of Bilal Afif was never interrupted" and, because Vogt's negligent supervision was the one "proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage," concluded that there was only one occurrence. (J.A. 24.) Afif timely filed an appeal.

II.

Before addressing Afif's arguments, we must determine whether we have appellate jurisdiction. The District Court filed its opinion on December 9, 2008. Afif filed a notice of appeal on January 8, 2009, within the statutory time limit of

thirty days.[2]  *See* 28 U.S.C. § 2107; *see also* Fed. R. App. P. 4(a).  However, in her notice, Afif stated that she was appealing to the Supreme Court of the Virgin Islands.  On April 30, 2009, Afif filed an Amended Notice of Appeal listing this court as the proper appellate court.

Real Legacy argues that this court lacks appellate jurisdiction because the Amended Notice of Appeal was filed after the thirty-day deadline.  But this misdiagnoses the possible jurisdictional affliction.  Afif did file a Notice of Appeal within the thirty-day deadline; the notice just listed the wrong court.  Federal Rule of Appellate Procedure 3(c) requires that the notice of appeal "name the court to which the appeal is taken."  This rule, although "jurisdictional in nature," is not founded on a statute.  *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316 (1988).  Moreover, the Supreme Court has stated that "the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits."  *Id.* In similar cases, other federal courts of appeal have excused technical noncompliance with Rule 3(c) where the circumstances make the destination of the appeal clear.  *See* 16A Wright & Miller, <u>Federal Practice and Procedure</u>, § 3949.4 n.65 (4th ed. 2008) (collecting cases).  The only appellate court with jurisdiction over Afif's appeal is the United States Court of Appeals for the Third Circuit.  *See* 28 U.S.C. § 1294(d); 48 U.S.C. § 1613a(d); V.I. Code tit. 4 § 32(a); *see also Kendall v. Russell*, 572 F.3d 126, 133 n.6 (3d Cir. 2009).  Under these

---

[2]  Afif also filed an identical document the next day, on January 9, 2009.

circumstances, we think the destination of the appeal was clear and that the defect in Afif's Notice of Appeal does not strip this court of its appellate jurisdiction. *Cf. Anderson v. District of Columbia,* 72 F.3d 166, 168 (D.C. Cir. 1995)(exercising jurisdiction over appeal that mistakenly listed the Supreme Court of the United States, rather than the Court of Appeals for the District of Columbia Circuit).

## III.[3]

Afif makes two arguments on appeal. First, she argues that the District Court misapplied the "cause theory" to the facts of this case. Second, she argues that the District Court failed to consider the meaning of the word "accident" in the definition of "occurrence" in the insurance contract.

We use the cause theory to determine the number of occurrences under an insurance policy. *See Flemming v. Air Sunshine, Inc.*, 311 F.3d 282, 294-95 (3d Cir. 2002). Accordingly, we look to the cause or causes of the resulting injury. *Id.* If there was "but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage," then there is only one occurrence. *Id.* (quoting *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982)).

From Afif's perspective, there were two acts, occurring at different times and in different ways, that caused two distinct injuries. First, Vogt's failure to

---

[3]

We exercise plenary review over a district court's summary judgment ruling.

5

properly barricade the swimming pool resulted in Bailal Afif's drowning. Second, Vogt's failure to properly search her home for the boy after he fell into the pool resulted in Lamia Afif's discovery of her son in the pool. Drawing on several of our precedents applying the cause theory, Afif argues that a proper application of the cause theory recognizes these two acts as separate causes.

We disagree. Afif's arguments confuse "but for" causation with proximate causation. The cause theory focuses on the latter, under which "the fact there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time" does not mean there were multiple occurrences. *Appalachian Ins. Co.*, 676 F.2d at 61. *Flemming* provides a good example of the application of this legal rule. In that sad case, James Flemming survived a plane crash off the coast of the Virgin Islands but drowned when the plane sank into the ocean. 311 F.3d at 284. His wife, Sabine Flemming, brought suit against the airline, which had an insurance policy covering liability of up to $500,000 per occurrence. Sabine Flemming argued that there were four occurrences, each a "but for" cause of her husband's death: (1) the plane crash, (2) the failure to provide a pre-flight safety briefing, (3) the failure to notify passengers of the impending crash and failure to provide emergency safety instructions, and (4) after the crash, the failure of the pilot to provide aid to James Flemming. We concluded that there was only one cause, and thus only one occurrence: the plane crash. We explained that

---

*Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 208 (3d Cir. 2007).

[w]hile it is true that James Flemming did not die upon impact of the plane on the water, this fact alone does not mean that the proximate cause of his death was the failure of the pilot to aid passengers after the crash. Under both the policy definition and our cause theory, the plane crash was one "constant, uninterrupted cause" that subjected James Flemming to "continuous or repeated exposure to substantially the same general conditions" and led to his death.

*Id.* at 295.

The same is true here. The cause of Flemming's death was a plane crash; the cause of Bailal Afif's death and his mother's emotional distress at finding her son in the pool was Vogt's negligent supervision. Both of these tragic events can be parsed into several distinct stages, each describing the ultimate cause in greater and greater detail. But the cause theory is designed to avoid the trap of infinite regression. We find *Flemming* to be legally indistinguishable from Afif's case and, therefore, agree with the District Court that there was "but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage—Vogt allowing Bilal Afif to step into the pool unsupervised." (J.A. 24.)

Afif's second argument does not persuade us otherwise. She argues that the District Court erred by not considering the plain language of the contract, which defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: (a) Bodily injury or (b) Property damage." (J.A. 154.) However, the contract in *Flemming* used almost identical language, defining "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage," and we still came to

7

the conclusion that there was only one occurrence. *Flemming*, 311 F.3d at 295. Plainly, then, the definition of occurrence in the insurance contract does not change the outcome of this appeal. There was only one "occurrence"—the tragic "accident" caused by "continuous and repeated exposure" to the condition of Vogt's negligent supervision.

IV.

The cause theory determines the number of occurrences by focusing on the proximate cause of the ultimate injury. Here, the sole proximate cause was Vogt's negligent supervision. Nothing in the language of the contract compels a different conclusion. Accordingly, like the District Court, we conclude that there was but one "occurrence." For all of the reasons set forth above, we affirm the judgment of the District Court.