622 S.E.2d 525

**OWNERS INSURANCE COMPANY, Plaintiff,**

v.

**Charles SALMONSEN, individually and on behalf of all others similarly situated, CDG, Inc. f/k/a Charleston Gypsum Dealers & Supply Co., Inc., Frank Crider, Raymond G. Walford, Henry (Hank) Futch, and Harold (Hal) Futch, Defendants.**

**No. 26059.**

Supreme Court of South Carolina.

Heard Sept. 21, 2005.

Decided Nov. 7, 2005.

Morgan S. Templeton and Graham P. Powell, of Elmore & Wall, P.A., of Charleston, for plaintiff.

Mary Leigh Arnold, of Mt. Pleasant; and Steven L. Smith, of Smith, Collins & Newton, of Charleston, for defendants.

Justice MOORE:

We accepted this certified question to determine the meaning of the term "occurrence" in a commercial general liability insurance policy.

## FACTS

The underlying action in this federal case is a products liability class action arising from the sale of defective Parex, a synthetic stucco distributed by Defendant CGD, Inc.[1] The defective stucco allegedly caused water intrusion that damaged class members' property. CGD was insured at the time under a commercial general liability insurance policy issued by Plaintiff Owners Insurance Company (Insurer). Insurer sought a declaratory judgment that the policy in question does not provide coverage for this class action.

The district court ruled in favor of coverage but found an issue remains regarding the amount of coverage depending

---

1. The seller of defective goods may be liable under S.C.Code Ann. § 15–73–10 (2005).

upon the meaning of the term "occurrence." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." If distribution of the stucco to various buyers is considered one occurrence, the policy's per occurrence limit of $1 million applies; if each sale is an occurrence, the aggregate limit of $2 million applies.

The following question was certified to this Court:

To determine the number of occurrences for purposes of a commercial general liability insurance policy's liability limit, will South Carolina adopt the majority or minority rule?

## ISSUE

Is each individual sale of a defective product an occurrence or is the general act of distribution a single occurrence?

## DISCUSSION

As discussed in various treatises, the majority rule in interpreting the meaning of "occurrence" in a liability policy is the so-called "cause test" which focuses on the cause of the damage rather than the number of claimants or injuries. The minority view, on the other hand, focuses on the effect of the insured's action and considers each event or each injury a separate occurrence. *See generally* Michael Sullivan, Annotation, *What Constitutes Single Accident or Occurrence within Liability Policy Limiting Insurer's Liability to a Specified Amount Per Accident or Occurrence*, 64 A.L.R.4th 668 (2004); Am.L. Prod. Liab. 3d § 58:28 (2005); 46 C.J.S. Insurance § 1129 (2005). The discussion of a majority-versus-minority view summarizes an amalgam of cases, including vehicle accidents, flooding, fist-fights, and so on,[2] and is not limited to product liability cases. Notably, there is no prevailing view in the specific context of product liability cases involving the distribution of a defective product. *Compare Champion Internat'l Corp. v. Continental Cas. Co.*, 546 F.2d 502 (2d Cir.1976) (repeated sale of defective paneling was only one occurrence), *and Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.*, 447 F.2d 204 (5th Cir.1971) (each sale of defective bird feed was separate occurrence). In light of the diverse contexts in which the meaning of "occurrence" may

---

2. *See* Annot., *supra*, §§ 8–19.

arise, we decline the district court's invitation to simply choose the majority or minority view and instead focus narrowly on the issue at hand.

This case involves the distribution of inherently defective goods, and not the defective distribution of otherwise satisfactory goods.[3] There is no indication CGD defectively distributed the product in question. Further, the policy here provides coverage for an "occurrence" including a "continuous and repeated exposure to substantially the same general harmful conditions." Because the distributor has taken no distinct action giving rise to liability for each sale, we conclude under this policy definition that placing a defective product into the stream of commerce is one occurrence.

Accordingly, we limit our ruling on this issue by focusing on the specific context and policy language before us and conclude there has been a single occurrence.

**QUESTION ANSWERED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

3. We are persuaded by Insurer's argument that *Michigan Chem. Corp. v. American Home Assurance Co.*, 728 F.2d 374 (6th Cir.1984), a products liability case, is distinguishable from the case before us. In that case, the federal court, applying Illinois law, concluded that each shipment was a separate occurrence where the insured accidentally shipped flame retardant instead of a feed supplement. The flame retardant was mixed into livestock feed sold to farmers whose animals had to be destroyed as a result of the contamination. It was the insured's defective distribution which caused the damage rather than an inherent defect in the product as manufactured.