**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
Plaintiff,

v.

**CONTINENTAL CASUALTY COMPANY and C.K.S. Packaging, Inc., Defendants.**

**CIVIL ACTION NO. 1:14–CV–2207–WCO**

United States District Court, N.D. Georgia, Atlanta Division.

Signed January 4, 2017

Ariel Ephraim Shapiro, David Marlow Atkinson, Swift, Currie, McGhee & Hiers, LLP, Henry E. Scrudder, Jr., Scrudder Bass Quillian Horlock Taylor & Lazarus, Atlanta, GA, for Plaintiff.

Daniel Pickett, James T. Byrnes, Kristin V. Gallagher, Carroll McNulty & Kull, LLC, Basking Ridge, NJ, Joshua C. Weisberg, Carroll McNulty & Kull, LLC, New York, NY, David Cole Rhodes, Henry E. Scrudder, Jr., Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus LLP, J. Robert Persons, Smith, Moore, Leatherwood, LLP, Atlanta, GA, for Defendants.

## ORDER

WILLIAM C. O'KELLEY, Senior United States District Judge

The captioned case is before the court for consideration of defendant Continental Casualty Company's motion for summary judgment [84]; plaintiff Travelers Property Casualty Company of America's motion for summary judgment [85]; and defendant C.K.S. Packaging, Inc.'s motion to strike [96].

### I. Factual Background [1]

Defendant C.K.S. Packaging, Inc. ("CKS") is a manufacturer and supplier of plastic containers, headquartered in Atlanta, Georgia. (Second Am. Compl. ¶ 6.) CKS has been named as a defendant or third-party defendant in personal injury lawsuits, filed in several states, alleging that a type of plastic bottle it manufactured caused or contributed to personal injuries ("Underlying Cases"). (*Id.* at ¶ 7.) Each of the Underlying Cases involves a bottle

---

1. These are undisputed facts culled from defendant Continental Casualty Company's statement of undisputed material facts ("Def.'s Facts"), plaintiff's objections and responses thereto, plaintiff Travelers Property Casualty Company of America's statement of undisputed material facts ("Pl.'s Facts"), plaintiff's additional statement of undisputed material facts ("Pl.'s Additional Facts"), defendant's objections and responses thereto, and various supporting documents.

manufactured by CKS that was filled with gel fuel by another company, labeled, and sold. (Pl.'s Facts ¶ 3.) Each of the claimants in the Underlying Cases sought to recover for burn injuries allegedly caused when gel fuel from a CKS bottle was used in connection with a firepot. (*Id.* at ¶ 7.) CKS has requested coverage from Travelers Property Casualty Company of America ("Travelers") and Continental Casualty Company ("Continental") for the Underlying Cases. (*Id.* at ¶ 5.)

Travelers issued five primary one year general liability insurance policies to CKS, with respective limits of $950,000 per occurrence and $5,000,000 in the general aggregate, covering the policy periods of December 27, 2009 to December 27, 2010, December 27, 2010 to December 27, 2011, December 27, 2011 to December 27, 2012, December 27, 2012 to December 27, 2013, and December 27, 2013 to December 27, 2014 (the "Travelers Policies"). (Def.'s Facts ¶ 81.) The 2009–2010, 2010–2011, 2011–2012, and 2012–2013 Travelers Policies are individually subject to a $50,000 self-insured retention per occurrence. The 2013–2014 Travelers Policy is subject to a $100,000 self-insured retention per occurrence. (*Id.* at ¶ 82.)

The Travelers Policies contain, in pertinent part, the following:

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

 a. We will indemnify the insured for those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

 * * * *

 (1) The amount we will indemnify the insured for damages is limited as described in LIMITS OF INSURANCE (SECTION III);

 * * * *

 b. This insurance applies to "bodily injury" and "property damage" only if:

 (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory," and

 (2) The "bodily injury" or "property damage" occurs during the policy period.

 * * * *

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

 a. We will indemnify the insured for those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this coverage part applies.

 * * * *

SECTION III—LIMITS OF INSURANCE

THE LIMITS OF INSURANCE PROVIDED BY THIS COVERAGE PART APPLY ONLY TO AMOUNTS IN EXCESS OF THE APPLICABLE "RETAINED LIMITS."

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will indemnify the insured for in excess of the "retained limit" regardless of the number of:

 a. Insureds

 b. Claims made or "suits" brought; or

 c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will indemnify the insured for the sum of:

 a. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

 b. Damages under Coverage B;

3. The Products–Completed Operations Aggregate Limit is the most we will indemnify the insured for in the excess of the "retained limit" under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will indemnify the insured for in excess of the "retained limit" under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will indemnify the insured for in excess of the "retained limit" for damages under Coverage A because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the fire Damage Limit is the most we will indemnify the insured for in excess of the "retained limit" under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

With respect to 2. and 3. above, each indemnity payment we make for damages under this Coverage Part reduces by the amount of the indemnity payment, the applicable aggregate limit of insurance. This reduced limit will then be the amount of insurance available for further indemnity payments for damages under the applicable aggregated Limit of Insurance.

Our obligations under Coverage A and B of this Coverage Part end when the applicable amount of insurance available in excess of the "retained limit" has been used up. If we pay any amounts for damages in excess of that amount of insurance, you agree to reimburse us for such amounts.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

\* \* \* \*

SECTION V—DEFINITIONS

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \* \*

15. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

 (1) Products that are still in your physical possession; or

 (2) Work that has not yet been completed or abandoned.

(Compl. Ex. A2.)

The 2011–2012, 2012–2013, and 2013–2014 Travelers Policies contain the follow-

ing amended definition of "occurrence," also known as a "batch clause":

### AMENDMENT DEFINITION OF OCCURRENCE—BATCH

1. The definition of "occurrence" in Section V—Definitions is amended to include the following:

All actual or alleged damages arising out of "bodily injury" or "property damage" to which this insurance applies, and which arises out of the same:

a. Lot or lots of "your product" manufactured, handled, sold, acquired or in any way distributed or disposed of by or for any insured; or

b. Supervision, recommendations, warnings, instructions or advice provided or which should have been provided in connection with "your product";

shall be considered as arising out of the same "occurrence."

(Def.'s Facts ¶ 86.) When issued, the 2009–2010 and 2010–2011 Travelers Policies did not contain a batch clause. (Pl.'s Additional Facts ¶¶ 4–5.) After this lawsuit was filed, these policies were reformed to include the batch clause. (Id. at ¶ 8.)

The Travelers Policies also contain the following non-cumulation clause:

### AMENDMENT—NON–CUMULATION LIMIT OF EACH OCCURRENCE LIMIT OF LIABILITY AND NON–CUMULATION OF PERSONAL AND ADVERTISING INJURY LIMIT OF LIABILITY

1. Paragraph 5. of Section III—Limits of Insurance, is amended to include the following:

Non-cumulation of Each Occurrence Limit—If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a Self–Insured Excess Commercial General Liability Coverage Form for the insured issued by us or any affiliated insurance company, the amount we will indemnify the insured for in excess of the "retained limit" is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence."

(Id. at ¶ 87.)

Continental issued five commercial umbrella policies to CKS, under policy number 4017854512, in effect from December 27, 2009 to December 27, 2010, December 27, 2010 to December 27, 2011, December 27, 2011 to December 27, 2012, December 27, 2012 to December 27, 2013, and December 27, 2013 to December 27, 2014 (the "Continental Policies"). (Id. at ¶ 95.) The Continental Policies have limits of $25,000,000 each incident and $25,000,000 in the aggregate and are specifically underwritten to provide coverage in excess of the Travelers Policies. (Id. at ¶ 96.)

The Continental Policies contain the following condition:

### SECTION IV—CONDITIONS

Maintenance of "Scheduled Underlying Insurance"

While this policy is in force you agree that the policies listed in the Declarations as "scheduled underlying insurance" and their renewal and replacements shall be maintained, without alterations of terms or conditions, in full effect during the term of this policy; except for reduction or exhaustion of the aggregate limits of insurance in the "schedule of underlying insurance," provided that such reduction or exhaustion is solely the result of "incidents" taking place during this policy period, and not before. If you fail to maintain "scheduled underlying insurance," this condition shall not in-

validate this policy. However, in the event of such failure, we will only be liable to the same extent as if you had complied with this condition. (*Id.* at ¶ 107.)

Travelers received notice of the first of the Underlying Cases in February 2012. (*Id.* at ¶ 55.) Travelers assumed the defense of CKS for the Underlying Cases. (*Id.* at ¶ 56.) Almost one year after receiving notice of the first of the Underlying Cases, by correspondence dated January 30, 2013, Travelers for the first time issued a coverage position letter to CKS. (*Id.* at ¶ 57.) Travelers notified CKS of its intent to rely upon a single occurrence position and the non-cumulation clause. Travelers did not mention an amendment to the definition of "occurrence" in the Travelers Policies or refer to a batch clause. (*Id.* at ¶ 61.) By correspondence dated February 21, 2013, Continental informed Travelers that it disagreed with Travelers' position that the Underlying Cases constituted a single occurrence. (*Id.* at ¶ 62.)

By correspondence dated June 11, 2013, Travelers advised Continental that it had been served with "a $24,000,000 time-limit settlement demand" and that it was prepared to pay the "full limit available under the Travelers Policies—$950,000—in response to the demand." (*Id.* at ¶ 63.) Travelers also stated that "it also believes that it is appropriate for Continental to assume defense of CKS in the Actions" and asked Continental to advise whether it would accept Travelers's tender of defense and indemnification for CKS. (*Id.* at ¶ 64.) Travelers did not mention an amendment to the definition of "occurrence" in the Travelers Policies or refer to a batch clause as the basis for Travelers' position. (*Id.* at ¶ 65.) By correspondence dated June 17, 2013, Continental objected to Travelers's attempt to pay out its claimed limits and advised Travelers that under Georgia law a primary insurer's tender of limits to an

excess insurer did not terminate the primary insurer's duty to defend. (*Id.* at ¶ 66.) The letter also challenged Travelers's position that the Travelers Policies were subject to a single $950,000 limit of indemnity and advised Travelers that it would not be permitted to withdraw its defense of CKS without first commencing a declaratory judgment action. (*Id.* at ¶ 67.)

By correspondence dated August 14, 2013, Travelers acknowledged receipt of notice of more Underlying Cases and asserted that they constituted a single occurrence within the meaning of the Travelers Policies and that Travelers's total limit of liability for the Underlying Cases was only $950,000. Travelers based its assertion upon the Travelers Policies's non-cumulation clauses. (*Id.* at ¶ 69.) Travelers did not mention an amendment to the definition of "occurrence" in the Travelers Policies or refer to a batch clause. (*Id.* at ¶ 70.)

By correspondence dated June 19, 2014, Travelers advised CKS that it was currently defending CKS in the Underlying Cases, that it had settled a number of the Underlying Cases, that the applicable limits of the Travelers Policies were nearly exhausted, and that "[u]pon exhaustion Travelers will have no further obligation to CKS under the Travelers Policies with respect to the Lawsuits." (*Id.* at ¶ 71.) Travelers once again asserted that the Underlying Cases constituted a single occurrence within the meaning of the Travelers Policies and that Travelers's total limit of liability for the Underlying Cases was only $950,000 based upon the Travelers Policies' non-cumulation clauses. (*Id.* at ¶ 72.) Travelers did not mention an amendment to the definition of "occurrence" in the Travelers Policies or refer to a batch clause. (*Id.* at ¶ 73.)

Thereafter, Travelers exhausted the $950,000, the amount it considered to be the policy limit applicable to the Underly-

ing Cases, and notified Continental and CKS that its limits of liability had been properly exhausted and that Travelers had no further obligation to provide a defense to CKS or fund any settlements. After notification that Travelers's limits were exhausted, Continental proceeded to settle a number of the Underlying Cases. (*Id.* at ¶ 74.)

With respect to handling the Underlying Cases, initially, Travelers set up two separate claim numbers to correspond to the 2009–2010 and 2010–2011 policy periods. The date of the claimant's bodily injury would determine under which claim number it was handled. (*Id.* at ¶ 75.) As additional claims were submitted by CKS, Travelers ultimately set up five separate claim numbers to correspond to the five separate policy periods in which bodily injuries in the Underlying Cases occurred. (*Id.* at ¶ 76.) Travelers maintained five sets of claim notes to correspond to the five claim numbers it set up for the Underlying Cases. (*Id.* at ¶ 77.)

When Travelers understood what settlement authority defense counsel was requesting, it would set reserves under one of the five separate claim numbers based upon when bodily injury in the Underlying Case occurred. (*Id.* at ¶ 78.) When Travelers made payments for settlements of the Underlying Cases, those amounts would be allocated to the claim number corresponding to when the bodily injury in the Underlying Case occurred. (*Id.* at ¶ 79.) Travelers initially charged CKS for more than one self-insured retention under two of the Travelers Policies but later returned monies to CKS so that it would be charged for only one retention. (*Id.* at ¶ 80.) Travelers explains that this was due to an inadvertent technical error and that it consistently took the position that the Underlying Cases involved one occurrence and that the applicable limit of liability was $950,000.

On July 11, 2014, Travelers filed this action for declaratory judgment. Travelers seeks a declaration that all of the claims in the Underlying Cases involving the plastic bottle manufactured by CKS were caused by a single "occurrence" as defined in the Travelers Policies.

## II. Legal Analysis

### A. Motions for Summary Judgment

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is well settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *See, e.g., Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), *reh'g denied*, 815 F.2d 66 (11th Cir. 1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples*, 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The materiality of facts is governed by the relevant substantive law in the case.

*Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party. The non-moving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). "If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999) (citation omitted).

Both Travelers and Continental have moved for summary judgment. In its summary judgment motion, Continental requests the court to declare that the claims in the Underlying Cases constitute multiple "occurrences," that all five Travelers Policies are triggered, that the non-cumulation clauses are inapplicable to the Underlying Cases, that Travelers be required to reimburse Continental for all amounts paid by Continental in connection with settlements of certain of the Underlying Claims, and that Travelers be required to reimburse Continental for all attorneys' fees, costs, and other expenses incurred by Continental in connection with the Underlying Cases.

In its summary judgment motion, Travelers requests the court to declare that all damages sought or otherwise at issue in the Underlying Cases were caused by a single occurrence, that the Travelers Policies provide a total of $950,000 in insurance coverage to CKS for the otherwise covered damages sought in the Underlying Cases, that the applicable limits of insurance of the Travelers Policies have been properly exhausted through the payment of settlements, that Travelers owes no further duties to CKS in connection with the Underlying Cases, and that Continental is liable to and must reimburse Travelers for the costs incurred by Travelers to defend CKS in the Underlying Cases after the date of exhaustion of the applicable limits of the Travelers Policies.

Continental first asserts that Travelers's motion should be denied without even considering the merits of its arguments because Travelers lacks a sufficient factual basis for its summary judgment motion. In support, Continental states that the entire factual bases for Travelers's motion are the pleadings it filed in this action, a single exhibit, and the declaration of Travelers's claims handler Sara N. Conklin ("Conklin"), which is deficient (the "Conklin Declaration"). The court disagrees. Travelers's motion does not rely on its unsupported allegations in a pleading as evidence. *Compare Keever v. First Am. Title Ins. Co.*, 4:13–cv–00246–HLM, 2014 WL 11460792, at *2 (N.D. Ga. May 21, 2014), *aff'd*, 605 Fed.Appx. 953 (11th Cir. 2015) (holding that plaintiff could not cite only unsubstantiated allegations in the complaint in support of a summary judgment motion). In support of various paragraphs in its statement of material facts, Travelers cites to allegations in its complaint and to Continental's admissions of those allegations in its answer.

Pursuant to Federal Rule of Civil Procedure 56(c)(1), a party may support assertion of fact by "citing to particular parts of materials in the record, including... admissions." When a party admits the allegations of a complaint, it is treated as a judicial admission, and the admitted facts are considered evidence. *Rahn v. Olens*, 1:14–cv–3660–RWS, 2015 WL 4717448, at *3 (N.D. Ga. Aug. 7, 2015) (holding that "[a]dmissions or allegations appearing in pleadings are treated as ad-

missions in judicio and, if not withdrawn, are conclusive of the facts contained therein"); *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 110 F.Supp.3d 1285, 1293–94 (N.D. Ga. 2014), *aff'd,* 609 Fed.Appx. 578 (11th Cir. 2015) (holding that "[j]udicial admission are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them") (internal quotation and citation omitted). By citing to Continental's answer, Travelers cited to an "admission" in compliance with Federal Rule of Civil Procedure 56. The material facts admitted by Continental in its answer and in response to Travelers's statement of material facts constitute proper evidence in support of Travelers's motion for summary judgment. More importantly, despite raising an objection, Continental does not dispute the facts or point to contrary evidence in the record.

With respect to the Conklin Declaration, contrary to Continental's argument, the court finds that it is not conclusory in nature or without any indication for the source or foundation of Conklin's purported personal knowledge. The Conklin Declaration states that it is based on Conklin's personal knowledge and includes several paragraphs establishing the basis for her personal knowledge regarding the Underlying Cases including that: 1) Conklin is employed by Travelers as a claim professional in the Complex Claims Unit, 2) on behalf of Travelers, Conklin was assigned to handle the Underlying Cases, 3) except for a brief period of maternity leave, Conklin has been responsible for handling the Underlying Cases from September 2012 through the present, and 4) based on Conklin's investigation and handling of the Underlying Cases, she is familiar with the theories of recovery asserted against CKS. Furthermore, Conklin's personal knowledge relates directly to her testimony regarding the allegations against CKS, as well as Travelers's handling and resolution of the Underlying Cases.[2] The court finds that Conklin has set out sufficient facts to show that she is competent to testify on the matters in her declaration.[3] Accordingly, the court will not deny Travelers's motion for summary judgment on a procedural basis.

■■■ The main substantive issue in both summary judgment motions is whether the Underlying Cases constitute a single or multiple "occurrences" as defined in the Travelers Policies. It is not disputed that Georgia law governs the insurance coverage issues in this case.[4] The construc-

---

**2.** Although Travelers did not attach each of the 19 complaints in the Underlying Cases, Continental included the complaints as exhibits to its motion for summary judgment. Hence, they are part of the record in this case. Moreover, this court may take judicial notice of the complaints in the Underlying Cases. *See Davis v. Ocwen Loan Servicing, LLC.,* Civ. No. 1:15–cv–782–TWT, 2015 WL 3988702, at *1 n.1 (N.D. Ga. June 30, 2015) (holding that "the Court may take judicial notice of the previous complaints and court orders ... because they are matters of public record").

**3.** Travelers also points out that Conklin's Declaration was included to summarize the complaints and other documents and that Travelers's motion does not depend on the declaration.

**4.** Since Georgia is the forum state for this action, Georgia's choice of law rules apply. *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.,* 135 F.3d 750, 752 (11th Cir. 1998). Georgia follows the traditional choice of law rule of *lex loci contractus,* under which the validity, form, and effect of insurance contracts are governed by the law of the place where the contract was made. *Gen. Tel. Co. v. Trimm,* 252 Ga. 95, 96, 311 S.E.2d 460 (1984). Insurance contracts are considered "made" at the place where the contract was delivered to the insured. *Boardman,* 135 F.3d at 752. It is not disputed that both the Travelers Policies and Continental Policies were delivered to CKS at its offices in Atlanta,

tion of an insurance policy is a question of law for the court. O.C.G.A. § 15–2–1; *Park 'N Go of Ga., Inc. v. U.S. Fid. & Guar. Co.*, 266 Ga. 787, 791, 471 S.E.2d 500 (1996). Under Georgia law, the Travelers Policies must be interpreted according to the plain, ordinary meaning of the policy language. *Continental Cas. Co. v. H.S.I. Fin. Serv., Inc.*, 266 Ga. 260, 262, 466 S.E.2d 4 (1996). The Travelers Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Travelers asserts that all of the claims in the Underlying Cases constitute a single "occurrence" because they all involve "exposure to substantially the same general harmful condition." Although the specific details of the injuries vary, each of the claims involves CKS bottle and burn injuries allegedly caused because CKS bottle was used to package gel fuel for use in firepots. Travelers argues that because all of the Underlying Cases allege exposure to CKS bottle that was used in connection with a firepot, the "harmful condition" complained in each of the Underlying Cases was "substantially the same." In opposition, Continental contends that the bodily injuries of the nineteen claimants of the Underlying Cases did not result from a single accident because the claimants were injured in distinct, separate accidents that occurred over a span of five years in multiple states across the country, resulting in lawsuits filed in various states. Continental argues that the Underlying Cases constitute multiple "occurrences" because the harmful condition to which each of the claimants was exposed was unique and occurred at different times and spaces.

In *State Auto Prop. & Cas. Co. v. Matty*, 286 Ga. 611, 615, 690 S.E.2d 614 (2010), the Supreme Court of Georgia adopted the cause test to determine the number of "occurrences" at issue in liability policies. *Id.* (holding that "[w]e adopt the 'cause' theory for application in Georgia"). Under the cause test, "the number of accidents is determined by the number of causes of the injuries, with the court asking if '[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.' " *Id.* at 611. *Matty* involved a motor vehicle accident in which the insurance company's insured struck a bicyclist and then struck a second bicyclist. An accident reconstruction expert testified that it would have taken the driver "just over a second" to travel the 95 to 115 feet between the two bicyclists. *Id.* at 611–12, 690 S.E.2d 614. The insurance company argued that the incident constituted one accident and that it was responsible for providing only a single $100,000 limit of coverage, while the claimants argued that there were two accidents and that the insurance company was responsible for providing two $100,000 limits of coverage. *Id.* at 612, 690 S.E.2d 614. The Georgia Supreme Court explained that in the context of vehicle accidents involving multiple collisions, "courts look to whether, after the cause of the initial collision, the driver regained control of the vehicle before a subsequent collision, so that it can be said there was a second intervening cause and therefore a second accident." *Id.* at 614, 690 S.E.2d 614. The *Matty* court found that a course correction by the driver lasting less than a second could be deemed an intervening cause.

Because the parties have not submitted and the court is not aware of any Georgia courts applying the cause test to coverage disputes arising from product liability cases, it is instructive to look at courts outside of Georgia applying the test. For example, in *Stonewall Ins. Co. v. E. I. du Pont de Nemours & Co.*, 996 A.2d 1254,

Georgia. Accordingly, the insurance coverage issues are controlled by Georgia law. *Id.*

1258 (Del. 2010), where the underlying claims involved leaking plumbing systems damaged by a du Pont product that was allegedly unsuitable for use in that type of system, the Supreme Court of Delaware, applying the cause test, determined that over 460,000 individual product liability claims involving the same product were the result of a single occurrence. The court in *Stonewall Ins. Co.* concluded that the proper focus in determining the number of occurrences in a products liability case is on production and dispersal, not on the location of injury or the specific means by which injury occurred. *Id.* It held that "du Pont's production of an unsuitable product triggered only one single occurrence under the policies." *Id.* Similarly, in this case, all of the Underlying Cases involved CKS bottle used to package gel fuel for the firepots. Because all of the damages sought in the Underlying Cases were allegedly caused by the same product, the court finds that they were the result of a single occurrence.

▋ Continental points out that there were multiple, independent, and intervening acts between CKS's manufacture of the bottles, their being filled by the fuel gel supplier, their shipment and sale to various retailers across the country, and the use by the individual claimants over a five-year period. The bottles were shipped over several years and in various quantities. Consequently, Continental argues that the injuries in the Underlying Cases were not caused by one proximate, uninterrupted, and continuing cause. The court disagrees. Under the cause test, "the fact there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not mean there were multiple occurrences." *Real Legacy Assur. Co. v. Afif,* 409 Fed.Appx. 558, 561 (3d Cir. 2011) (internal quotation and citation omitted). The definition of the term "occurrence" in the Travelers Policies contemplates that one occurrence may have multiple and disparate impacts on individuals and that injuries may extend over a period of time.

Although "events can be parsed into several distinct stages, each describing the ultimate cause in greater and greater detail..., the cause theory is designed to avoid the trap of infinite regression." *Id.* at 562. For example, in *Flemming v. Air Sunshine, Inc.,* 311 F.3d 282, 295 (3d Cir. 2002), where a commercial airline passenger had drowned following an ocean crash, the court held that "while it is true that [the passenger] did not die upon impact of the plane on the water, this fact alone does not mean that the proximate cause of his death was the failure of the pilot to aid [the] passenger after the crash. Under ... [the] cause theory, the plane crash was one 'constant, uninterrupted cause' that subjected [the passenger] to 'continuous or repeated exposure to substantially the same general conditions' and led to his death." *Id. See also Owners Ins. Co. v. Salmonsen,* 366 S.C. 336, 339, 622 S.E.2d 525 (2005) (holding that the general act of distributing an allegedly defective product was a single occurrence and that the occurrence was not each individual sale). The cause theory focuses on the [proximate causation, not 'but for' causation.]" *Real Legacy Assur. Co.,* 409 Fed.Appx. at 561. "As long as the injuries stem from one proximate cause there is a single occurrence." *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56, 61 (3d Cir. 1982).

Here, the Underlying Cases undeniably involve multiple plaintiffs who suffered multiple injuries on multiple dates whose claims are set forth in multiple and varied complaints prepared by multiple attorneys. These facts, however, are irrelevant to the determination of what caused those injuries under the cause test. CKS bottle remains the "constant, uninterrupted cause"

that led to the injuries. The basis for CKS's alleged liability in each of the Underlying Cases was the decision to use the CKS bottle to package gel fuel for use in firepots.

Continental then urges the court to find that the Underlying Cases constitute multiple "occurrences" because "each exposure was a separate occurrence that caused the claimants' injuries." *Metropolitan Life Ins. Co. v. Aetna Cas. and Sur. Co.*, 255 Conn. 295, 765 A.2d 891, 893 (2001). The holding in *Metropolitan Life Ins. Co.*, which Continental cites in support of its argument, is inapposite here because that court applied the event test [5] and not the cause test adopted by the Georgia courts. *Id.* Under the event test, "a court looks to the number of events that resulted in the injuries and liability in question. If the injuries resulted from an event, 'unbroken with no intervening agent or operative factor,' there is but one accident under the policy." *Matty*, 286 Ga. at 614, 690 S.E.2d 614. However, the Georgia Supreme Court expressly rejected the event test in favor of the cause test, finding the cause test to be more consistent with Georgia tort law and a better expression of the intent of the parties to the insurance contract.[6] *Id.* at 617, 690 S.E.2d 614. Applying the cause test, the court finds that because all of the injuries alleged in the Underlying Cases resulted from the same proximate cause,

CKS bottle, the Underlying Cases constitute a single "occurrence."

■ Travelers next asserts that the non-cumulation clause applies in this case. The court agrees. The non-cumulation clause provides:

> If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a Self-Insured Excess Commercial General Liability Coverage Form for the insured issued by us or any affiliated insurance company, the amount we will indemnify the insured for in excess of the "retained limit" is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence."

Under this language, if the same occurrence causes bodily injury during multiple policy years, the per-occurrence limits of each of the Travelers Policies are reduced by any payment for damages because of such bodily injury, regardless of whether that payment was made because of bodily injury that occurred during that policy year. In applying this clause, the court finds that although the Underlying Cases allege bodily injuries that took place during the policy period of each of the five

---

**5.** In *Metropolitan Life Ins. Co.*, 765 A.2d at 893, after applying the event test, the Connecticut Supreme Court also noted:

> Claimants were exposed to asbestos in several different places, in varying amounts, over the course of many years, making this case one in which multiple occurrences created multiple injuries. Under the cause test, each exposure was a separate occurrence that caused the claimants' injuries.... [E]ven under the cause test, we are not persuaded that thousands of exposures to asbestos, occurring at different times and places, constitute one occurrence.

*Id.* at 908 (internal quotation and citation omitted). For the reasons set forth above, the court disagrees with the Connecticut court's application of the cause test and rejects the dicta.

**6.** The Georgia court also rejected the effect test, under which "the number of accidents is determined from the point of view of the person who was injured, so that each individual injury constitutes a separate 'accident.'" *Matty*, 286 Ga. at 617, 690 S.E.2d 614.

Travelers Policies, a single "each occurrence" liability limit of $950,000 applied to all of the Underlying Cases under the Travelers Policies because the Underlying Cases constitute a single "occurrence." Because Travelers has paid $950,000 to resolve various Underlying Cases, each of the five per-occurrence limits have been reduced by that amount (i.e., all five per-occurrence limits have been reduced to zero). Travelers's payment of $950,000 to settle the Underlying Cases on behalf of CKS, therefore, properly exhausted Travelers's defense and indemnity obligations with respect to the Underlying Cases.[7]

In opposition, Continental argues that the non-cumulation clause does not apply here because this case does not involve one "occurrence" that caused bodily injury to a single person over a period of multiple policies. This action involves nineteen Underlying Cases arising from multiple "occurrences" causing bodily injury to different people over the course of the five policy periods of the Travelers Policies. Continental argues that this case is distinguishable from *Plantation Pipeline Co. v. Continental Cas. Co.*, Civil Action No. 1:03–cv–2811–WBH, 2008 WL 10884027, at *1 (N.D. Ga. July 9, 2008), where the plaintiff's gasoline pipeline leaked gasoline onto the property of a landowner, and over a period of years, the gasoline migrated extensively, causing the plaintiff to be liable for damages to various landowners. The defendant had written two, three-year umbrella excess liability insurance policies both of which contained non-cumulation clauses. The parties agreed that the leak began sometime during the term of the first policy and was discovered and repaired during the term of the second poli-

cy. The plaintiff conceded that the site leak was a single occurrence, and the court held that the non-cumulation clauses limited the plaintiff's coverage to a single policy's $5 million occurrence limit. *Id.* at *6. Although the facts in this case are different from the facts in *Plantation Pipeline Co.*, the holding in *Plantation Pipeline Co.* does not limit the application of the non-cumulation clause to the facts in that case.[8] Other courts have applied non-cumulation clauses to cases involving multiple injuries to multiple individuals over multiple policy periods, and Continental has not proffered any reason why this court should not do so. *See Stonewall Ins. Co.*, 996 A.2d at 1259–1261 (applying a non-cumulation clause to limit the available insurance to one policy limit where thousands of injuries occurred over several policy periods); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (applying the non-cumulation clause to limit coverage to one policy period where thousands of asbestos exposure claims occurred over several policy periods).

Continental also argues that coverage is available under all of the Travelers Policies because it is undisputed that the Underlying Cases involve bodily injuries that occurred during each of the five policy periods. As Continental points out, pursuant to each of the Travelers Policies that require that "the 'bodily injury' . . . occur during the policy period," each policy is triggered. Contrary to Continental's argument, however, applying the non-cumulation clause to limit the coverage in this case would not render this provision "mere surplusage." In Georgia, "[t]he rules of construction require the court to consider the policy as a whole, to give effect to each provision,

7. The court notes that CKS agrees with this position. (CKS's Answer ¶¶ 10, 11, 24.)

8. Although Continental argues that this case does not present the proper factual scenario for application of a non-cumulation clause because the cases where Georgia courts have applied non-cumulation clauses are factually similar to *Plantation Pipeline Co.*, Continental has not submitted any factually similar cases.

and to interpret each provision to harmonize with each other." *ALEA London Ltd. v. Woodcock*, 286 Ga.App. 572, 576, 649 S.E.2d 740 (2007). When the policy is read as a whole, the non-cumulation provision comes into play when, among other things, more than one policy period is triggered. Under the plain language of the non-cumulation provision, payment of damages because of bodily injury caused by a single occurrence in one policy year reduces the "each-occurrence" limit available to pay such damages in other policy years. *See Sherman & Hemstreet, Inc. v. Cincinnati Ins. Co.*, 277 Ga. 734, 738, 594 S.E.2d 648 (2004) (enforcing the non-cumulation clause that "provided for only one coverage limit "per occurrence"); *Plantation Pipeline Co.*, Civil Action No. 1:03–cv–2811–WBH, 2008 WL 10884027, at *6 (noting that "Georgia law allows the use of [non-cumulation] clauses, and this Court should not interfere with an insurance company's freedom to limit its exposure within legal limits unless there is a compelling reason to do so").

Continental has filed as supplemental authority a recent decision by the Georgia Court of Appeals in *Columbia Casualty Co. v. Plantation Pipe Line Co.*, 338 Ga. App. 556, 790 S.E.2d 645 (2016). In that case, the Georgia Court of Appeals held that an excess insurer that covered a pipeline company when an underground turbine fuel leak was detected is liable up to the policy's limit for decades of continuing environmental contamination the leak caused. *Id.* at 563, 790 S.E.2d 645. That court refused to adopt the "continuous trigger theory" to allocate the loss across successive policy periods because the policy at issue did not provide that it applied to property damage that occurred during the policy period but required only that the occurrence had taken place during the policy period. *Id.* The court reasoned that the terms of the policy did not limit coverage to property damage that occurred during the policy period. *Id.* Continental argues that because the Travelers Policies do provide that they apply only to "bodily injury" or "property damage" if it occurs during the policy period, the claims should be allocated across the policy periods of the five Travelers Policies. The court does not disagree. The issue here, however, is not whether each policy was triggered by the Underlying Cases but whether the Underlying Cases constituted a single or multiple "occurrences" and whether the non-cumulation clause applies. Accordingly, the recent Georgia decision does not change this court's analysis.[9]

 Continental contends that Travelers's own actions are evidence that it deemed the Underlying Cases to constitute claims falling under all five of the Travelers Policies based upon when the bodily injury occurred and not a single claim falling under only the first Travelers Policy. As set forth in detail above, Travelers set up five claim numbers, corresponding to the five policy periods, with five separate sets of claim notes. Travelers also set reserves and paid settlements for the claims based on when the bodily injuries occurred and initially even charged CKS more than one $50,000 per-claim retention.[10] As Travelers points out, however, the issue in this case is controlled by the plain meaning of the Travelers Policies,

9. The court also notes that the facts in *Columbia Casualty Co.*, 338 Ga.App. at 556, 790 S.E.2d 645, are distinguishable from those here. In addition, Judge Dillard, concurring in judgment only, pointed out that "the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent." *Id.* at 564, 790 S.E.2d 645.

10. Travelers states that the second charge was an inadvertent accounting error and was reversed when brought to the attention of the claims handler.

not parol evidence regarding the manner in which Travelers handled the Underlying Cases. None of the parties contend that the language in the Travelers Policies is ambiguous. The Travelers Policies must be interpreted according to the plain, ordinary meaning of the policy language. *Continental Cas. Co.*, 266 Ga. at 262, 466 S.E.2d 4. "Extrinsic parol evidence as to the surrounding circumstances may only be used to aid in the construction of ambiguous language, and is not admissible to contradict or construe an unambiguous contract." *Rosen v. Protective Life Ins. Co.*, 817 F.Supp.2d 1357, 1370 (N.D. Ga. 2011), *aff'd sub nom. Rosen v. Am. Guarantee & Liab. Ins. Co.*, 503 Fed.Appx. 768 (11th Cir. 2013)(unpublished) (internal quotation and citation omitted). Moreover, the multiple claim numbers evidence merely the existence of claims for damages for bodily injury in multiple policy periods, all of which resulted from the same occurrence.

The parties disagree as to the application of the batch clause. As set forth more fully above, the batch clause provides that the damages arising out of the same "[l]ot or lots of '[CKS's] product' manufactured, handled, sold, acquired or in any way distributed or disposed of by or for [CKS] . . . shall be considered as arising out of the same 'occurrence.'" The batch clause further provides that "[t]his definition applies regardless of the number of claims for damages made or 'suit' brought, or persons or organization making claims or bringing 'suits.'" Travelers asserts that this clause applies here and further supports the conclusion that the Underlying Cases constitute a single "occurrence" because each bottle involved in the Underlying Cases manufactured by CKS in its Atlanta plant is the same kind, sort, or group as the other bottles manufactured by CKS, and thus the alleged damages in the Underlying Cases arise out of the same "lot or lots" of CKS's product. In opposition, Continental argues that because Travelers assumed CKS's defense in connection with the Underlying Cases and failed to cite to the batch clause in its initial or any of its subsequent coverage position letters, Travelers is estopped from asserting the batch clause as a coverage defense and has waived the right to rely upon it. Continental also argues that Travelers cannot rely on the batch clause because it was added to the 2009–2010 and 2010–2011 Policies after commencement of this action without notice to Continental. Because the court concluded that the Underlying Cases constitute a single "occurrence" based on the definition outlined in the Travelers Policies, without the benefit of the batch clause, the court need not address whether the batch clause applies.[11]

Accordingly, the court hereby grants Travelers's motion for summary judgment and denies Continental's motion for summary judgment. More specifically, the court finds that all damages sought or otherwise at issue in the Underlying Cases were caused by a single "occurrence," that the Travelers Policies provide a total of $950,000 in insurance coverage to CKS for the otherwise covered damages sought in the Underlying Cases, that the applicable limits of insurance of the Travelers Poli-

11. Continental also argues that because the addition of the batch clause constitutes a material alteration of the Travelers Policies, if the court finds that the reformation is valid, then Continental is liable to CKS only to the extent it would have been had the Travelers Policies not been reformed. Because the court does not need to determine whether the refor- mation is valid, the court need not address the extent of Continental's liabilities if the reformation were found to be valid. For the same reason, the court need not address whether the affidavit of Richard Crane should be excluded because it was submitted by Continental to support its claim regarding the reformation.

cies have been properly exhausted through the payment of settlements, that Travelers owes no further duties to CKS in connection with the Underlying Cases, and that Continental is liable to and must reimburse Travelers for the costs incurred by Travelers to defend CKS in the Underlying Cases after the date of exhaustion of the applicable limits of the Travelers Policies.

### B. Motion to Strike

In this motion, CKS moves to strike a claim asserted by Continental against CKS for the first time in Continental's memorandum in opposition to Travelers's motion for summary judgment. In the alternative, CKS moves for leave to file its own out-of-time motion for partial summary judgment as to that claim. More specifically, CKS moves to strike Continental's claim that CKS has breached the "Maintenance of Scheduled Underlying Insurance" condition of the Continental Policies. This condition requires CKS to maintain the underlying insurance without alteration of terms or conditions. Continental alleged in its memorandum that the reformation of the 2009–2010 and 2010–2011 Travelers Policies by adding a batch clause is a material alteration of terms or conditions of those polices because it significantly reduces the amount of insurance available. In response to the motion, Continental contends that it has not asked the court to declare that CKS breached the condition by agreeing to the reformation of the Travelers Policies. Continental asserted merely that it was improper for Travelers and CKS to reform the Travelers Policies by adding the batch clauses in the middle of this action and that such reformation is not valid. Because the alleged claim CKS seeks to strike pertains to the reformation claim, and the court resolved the issues in this case without having to address that claim, the court need not address whether to strike that claim. Accordingly, the court denies the motion to strike as moot.

### III. Conclusion

For all the foregoing reasons, the court hereby **DENIES** defendant Continental Casualty Company's motion for summary judgment [84]; **GRANTS** plaintiff Travelers Property Casualty Company of America's motion for summary judgment [85]; and **DENIES as MOOT** defendant C.K.S. Packaging, Inc.'s motion to strike [96]. The clerk of the court is hereby **DIRECTED** to **ENTER** judgment in favor of plaintiff.

**IT IS SO ORDERED**, this 4th day of January, 2017.